277 So.2d 85

**Terry STEGALL, a four year old minor, who sues by his father and next friend, William O. Stegall**

**v.**

**Odias A. WYLIE.**

**SC 88.**

Supreme Court of Alabama.

April 26, 1973.

Potts & Young, Florence, for appellant.

Poellnitz, Cox, Robison, McBurney & Jones, Florence, for appellee.

**HARWOOD, Justice.**

Terry Stegall, a four year old, suing by his father and next friend, William O. Stegall, filed a suit against Odias A. Wylie. The complaint sought damages for injuries suffered by Terry when struck by an automobile driven by Wylie.

The jury trial resulted in a verdict and judgment in favor of the defendant Wylie. The plaintiff's motion for a new trial being overruled, an appeal was perfected to this court.

Since the parties occupy the same positions on appeal as they did in the court below, we will refer to them in this appeal as "plaintiff" and "defendant" rather than "appellant" and "appellee."

The evidence presented below is relatively free of contradictions.

The evidence presented by the plaintiff tended to show that Terry had run away from home. His mother, carrying another small child in her arms, went in search of Terry. She was accompanied by a friend, Mrs. Marie Haddock. Mrs. Haddock was likewise accompanied by three of her smaller children. As the group reached Sweetwater Avenue, Mrs. Haddock saw Terry. "It looked like he was coming from behind some houses." He began running and both she and Mrs. Haddock "hollered" at him to get out of the street. However, according to Mrs. Haddock, Terry left the sidewalk and ran almost across the street, and then turned and ran back, and the Wylie automobile hit him. Wylie's automobile was traveling in the same direction on Sweetwater Avenue as were Mrs. Haddock and Mrs. Stegall. Mrs. Stegall did not see Wylie's automobile until just before it hit Terry. While she did not know the speed at which it had been traveling before she observed it, the automobile from the time she observed it until it struck Terry, was going "real slow."

The plaintiff read the deposition of the defendant to the jury, other than certain questions and answers excluded by the court at a pretrial hearing. In this deposition, Wylie deposed that at the time of the accident he was going from his home on Sweetwater Avenue to get some soft drinks. He had gone about a block along Sweetwater Avenue when the accident occurred. He had driven along Sweetwater Avenue at a speed of between 10 and 12 miles per hour. He saw some people on the sidewalk on his right hand side and was looking in that direction. Suddenly the plaintiff "came flying out of the driveway" and into the path of his automobile.

He applied his brakes and "stopped on a dime." The plaintiff was struck by the right front of his automobile. Mr. Wylie testified that he does not drink intoxicating beverages, nor take "pep" pills, and had "not taken any kind of pills or anything" at the time of the accident.

For the defense Lillian Fuller testified that her house is just a little south of the scene of the accident which she witnessed from her front door. She saw some children on the sidewalk next to her house. Terry was just behind this group of children and all at once he made a dash into the street, "he just run into the side of the front end of the car." Terry appeared to be scared at the time. Wylie's automobile was going very slow at the time, and Terry was under the middle of the car when it stopped.

Ray Linwood Carpenter, as a witness for the defense, testified that he had been working on the roof of a house near the scene of the accident. He was resting at the time of the accident and saw it from his roof top location. He testified that all at once Terry "just run into the car" which was proceeding at about 12 to 15 miles per hour. Mr. Carpenter administered mouth-to-mouth resusitation to Terry after he was removed from under the automobile.

Terry received a fractured skull from the accident, and other injuries. In view of the verdict and judgment for the defendant, we see no need to discuss Terry's injuries.

The defendant did not testify in the trial below but, as before stated, the unexcluded parts of defendant's deposition were read to the jury by the plaintiff, who had taken the deposition.

From a reading of all the testimony, it would appear that the only variation in the evidence by either side is that while all of the witnesses to the accident, other than Mrs. Haddock, testified that Terry had suddenly run into the street from the side-walk before being struck by the automobile, Mrs. Haddock testified that Terry had run almost across Sweetwater Avenue, and then had turned and run back across the avenue before being struck.

Assignment of error No. 10 asserts error because of the action of the court in granting defendant's motion to exclude all of the answers of the defendant but the word "yes" as it appears in the following answer in the deposition:

"Q. Alright, and you saw some other children on the sidewalk there too?

"A. Yes, *that is how come me to do it I guess—seeing all those people—and when I glanced up again, the object in front of my car—he was just like a bullet.*"

(Emphasized portion of answer excluded.)

The argument of the plaintiff in support of this assignment is that although the rule is that ordinarily one cannot prove by a witness on direct examination what were his motives, fears, or other mental operations, on cross examination a witness may be asked his reasons for certain of his acts, and his motive and intention in respect to such acts. Armour & Co. v. Cartledge, 234 Ala. 644, 176 So. 334.

Plaintiff contends that an opponent-interrogatee is in the same position as a witness on cross examination insofar as being questioned as to his intent, mental operation, etc. This for the reason that an opponent-interrogatee certainly should not be able to complain that his own testimony is so unreliable as to stand in need of contradiction by others. Such view receives the strong approval of Judge McElroy in his work, The Law of Evidence in Alabama. See Vol. 3, Sec. 290.01, [9](a).

A reason often assigned as a basis for our so-called Rule of Exclusion is that one's subjective intent is insusceptible of contradiction.

■ Our Rule of Exclusion is to the effect that the uncommunicated intention or mental operation of a party is an inference to be drawn from facts, and not from the testimony of a witness as to such intent or mental operation, even though such state of mind be material to the issues.

A basis often assigned as supportive of the rule is that one's subjective intent is insusceptible of contradiction. Such reason ignores Justice Holmes' observation that one's state of mind is as much a fact as is the state of his digestion.

This rule prevails in no other jurisdiction. Unworkable since its origin, the rule is now so glossed by exceptions, many being attempted distinctions without any real differences, that its application is impossible with any degree of certitude.

This rule has been the subject of much critical discussion, and I see no reason to again reiterate these criticisms, but refer those interested to a thorough analysis of the rule by Judge McElroy in his article in 1 Alabama Lawyer 221; Wigmore on Evidence, 3rd Ed.Sec.1960, and the dissenting opinion of the late Chief Justice Livingston in McGuff v. State, 248 Ala. 259, 27 So.2d 241. In Conrad v. Conrad, 275 Ala. 202, 153 So.2d 635, in a special concurring opinion, this writer expressed the view that our Rule of Exclusion was nothing more than a jurisprudential will o' the wisp whose evanescent light served only to lead lower courts into the mire of reversal, and that it should be totally extirpated. He was joined in this view by the late Chief Justice Livingston.

■ We see no need, however, in this case to venture into the mystic maze of our Rule of Exclusion, for in our opinion the plaintiff could not be deemed to have probably suffered any injury to his substantial rights by the ruling in this instance.

In the depositional testimony which was admitted in evidence, the defendant testified that before reaching the scene of the accident he had driven about a block along Sweetwater Avenue and had passed a blinking caution light when he saw some people on the sidewalk, perhaps six or seven. He proceeded on about a hundred feet, and was looking to his right, but he did not see Terry until he got upon him— "he spied his mother and ran like a bullet out in the road."

Thus the defendant's testimony which was permitted was amply sufficient for the jury to have concluded and inferred without the excluded testimony that the defendant had seen people and children on the sidewalk, and that he was looking to his right (toward the sidewalk) as he proceeded on.

We hold that no error sufficient to cause a reversal on the lower court resulted from the exclusion of that part of the answer as shown above. Supreme Court Rule 45.

Plaintiff's assignment of error No. 1 is that the court erred in overruling his motion for a new trial. Under this assignment, the plaintiff has brought forward three grounds of his motion for a new trial, namely grounds 2, 3, and 5.

Ground 2 of the motion for a new trial was to the effect that the court erred in excluding the following question and answer propounded by the plaintiff to the defendant in the deposition.

"Q. And the reason why you hit Terry was that you were watching those people on the sidewalk on the right?

"A. No, I was just driving along there when I came to the caution light and I saw those people and I glanced and I saw the object. It was just like a bullet. I couldn't hardly tell what it was."

Plaintiff premises his argument on the basis that the defendant-interrogatee is in the same position as an opponent on cross examination, and therefore it was proper to question him as to the reason why he hit

Terry. See Armour & Co., et al. v. Cartledge, 234 Ala. 644, 176 So. 334.

The first sentence of the answer is negative in nature. The plaintiff therefore could not have been injured by the exclusion of this portion of the answer. However, counsel for the plaintiff argues that the second sentence of the answer, i. e., "It was just like a bullet. I couldn't hardly tell what it was," was of such a nature as to have raised a doubt in the jury's mind as to the veracity of the defendant.

Since the defendant had already testified in the deposition during his examination by counsel for the plaintiff that:

"I was looking on the right hand side and I just saw a small object when I looked and it went out in front of the car and I heard a bump. I couldn't tell what. It was just an object.

\*   \*   \*   \*   \*   \*

"Yes, I saw them first [the other people on the sidewalk] and when I went a little further \* \* \* of course, he was about, I would say, 50 or 60 feet ahead of them and suddenly he came flying out of the driveway into the path of the car.

\*   \*   \*   \*   \*   \*

"No, I didn't see him until I got upon him. He was 75 feet \* \* \* he spied his mother and ran like a bullet out in the road."

■ It is thus readily apparent that the excluded answer which counsel for the plaintiff contends could have raised questions in the jury's mind as to the defendant's veracity had previously been answered in substance by the defendant. The plaintiff could not therefore have probably been injured in any substantial right in this instance. Assignment of error No. 1 insofar as ground 2 of the motion for a new trial is concerned, furnishes no basis for reversal of this judgment.

The excluded answer made the basis of ground 3 of the motion for a new trial was:

"I was driving along there and when I noticed, there was an object just like a bullet in front of my car."

Counsel for the plaintiff makes much of the phrase "and when I noticed" in the above answer, and contends it indicates that the defendant was not duly cautious just before the accident. If this be so, then the same could as readily be inferred from defendant's admitted answers set out above. No injury therefore resulted to the plaintiff in this instance. Supreme Court Rule 45.

As to ground 5 of the motion for a new trial brought forward jointly with ground 3, we will observe that ground 5 is insufficiently argued to invite our review. Even so, a reading of the excluded answer shows that it is mostly unresponsive to the question asked, and that the small portion that is responsive is merely repetitive of prior admitted testimony. No merit attaches to this ground.

■ Under assignment of error No. 1, the plaintiff also contends that the court erred in excluding both a question and the answer thereto as set forth in ground 4 of the motion for a new trial. The record shows that the answer was excluded on motion of the *plaintiff* himself. The defendant then requested that the question also be excluded since he did not want it to appear, when the deposition was read to the jury, that the defendant had not answered the question. We consider the court's action in excluding the question as well as the answer was proper under these circumstances.

Assignment of error No. 9 asserts as error the action of the court in sustaining defendant's objection to a certain portion of plaintiff's argument. In this regard the record shows:

"Mr. Cox [attorney for defendant]: He persists in saying 'this is the only testimony we have from Mr. Wylie since he did not take the stand.' That's not

the reason we didn't have more * * * We object and move to exclude that.

"The Court: Motion sustained. We say that the portions of the deposition were put in evidence by agreement and it is testimony to be considered along with other testimony."

■ The rule in this state is that where a *party* in a civil suit is present at the trial, and fails or refuses to testify, his failure to testify may be commented upon in argument, and the fact that matters in issue are not peculiarly within the party's knowledge will not in and of itself furnish a sufficient ground to bar the adversary from commenting on the party's failure to testify. Hinton & Sons v. Strahan, 266 Ala. 307, 96 So.2d 426.

If the only thing shown in the record was the one instance made the basis of assignment of error No. 9, a more serious question of error would be raised in that the failure or refusal of a party in a civil action to testify when present is ordinarily subject to comment in argument by the opposing party. Hinton & Sons v. Strahan, supra; City of Bessemer v. Clowdus, 261 Ala. 388, 74 So.2d 259.

However, the record further shows that in opening argument to the jury counsel for the plaintiff stated: "Mr. Wylie saw fit not to testify in this case." The defendant's objection to this argument, and his motion to exclude the same were overruled.

Further, during the closing argument of plaintiff's counsel the record shows the following objection by counsel for the defendant:

"* * * and I don't think it is proper for him to comment on my not calling the defendant to the stand anymore than for me to say how many times he didn't call the mother of the plaintiff, * * * and we move to exclude it."

The court then stated: "Objection and motion overruled."

■ It was after this that the court sustained the objection of defendant's counsel as shown in assignment of error No. 9. Since on two occasions the court had permitted counsel for the plaintiff to comment on the failure of the defendant to testify, we deem that the jury was made fully aware of this fact by the arguments of plaintiff's counsel. No error will be cast on the trial court in this instance. Supreme Court Rule 45.

Assignment of error No. 3 charges error because of the court's action in sustaining defendant's objection to the following question propounded by the plaintiff to the witness Marie Haddock:

"Q. Would you state whether or not he [Terry] appeared to be dead?"

■ Mrs. Haddock testified without objection that she saw Terry under the car, and that he was bloody "wasn't moving." Other undisputed evidence as to Terry's appearance immediately after the accident was before the jury. This evidence showed he was bleeding from his mouth and ears, was unconscious, and was given mouth-to-mouth resusitation at the scene. Voluminous medical testimony and reports as to his injuries were also received in evidence. Since Terry obviously was not dead, and had made what one medical witness for the plaintiff described on cross examination as a remarkable recovery, and was doing well, it is apparent that the question sought evidence relating to an undisputed fact, i. e., that Terry was not dead at the time, and therefore sought evidence of no probative value. The court therefore did not err in its ruling in this instance.

Assignment of error No. 2 alleges error because of the court's action in overruling the plaintiff's objection to the following question propounded to the witness Ezekiel on recross examination, Ezekiel being a witness for the plaintiff:

"Q. Did you have reason to suspect that he had taken drugs?"

Mr. Ezekiel, a police officer, arrived on the scene of the accident some three or four minutes after its occurrence. He testified as to his investigation, and identified a number of photographs of the scene. He also testified that the speed limit on Sweetwater Avenue at the scene of the accident was 35 miles per hour.

On cross examination Ezekiel testified he had talked to the defendant at the scene and that he was sober. He then added:

"Now any type of drugs he would have had, I didn't observe. Any type of alcohol, I didn't observe that."

On redirect examination counsel for plaintiff asked:

"Q. Mr. Ezekiel, it is not as easy to detect whether a person is under the influence of drugs as it is to detect alcohol, is it?

"A. That's right."

On further recross counsel for defendant then asked the question made the subject of assignment of error No. 2, i. e., "Did you have reason to suspect that he had taken drugs?"

■ We do not agree with appellant that the question called "for the interworking of his [witness's] mind." He had previously testified without objection that the defendant was sober, and he did not observe any drugs, which we think must, in the background of the witness's testimony be interpreted to mean that he did not observe that the defendant was under the influence of any drug. This is borne out by the question of plaintiff's counsel that it is not as easy to detect whether one is under the influence of drugs as it is to detect that one is under the influence of alcohol. The question of which the counsel now complains, in light of the foregoing, sought merely to elicit testimony as to whether from Ezekiels's observation he had reason to suspect that the defendant had taken

drugs. This relates to a fact and not a mental operation.

Affirmed.

MERRILL, MADDOX, McCALL, and FAULKNER, JJ., concur.